Good afternoon, your honors. My name is Chad Spraker and I'm an assistant United States attorney and I intend to reserve about three minutes for rebuttal. Between the briefing and argument in this case, this court reaffirmed in United States v. Loftus that a scheme to defraud extends beyond an individual wire and furtherance of that scheme. Indeed, this primary issue before the court today, therefore, is whether the district court committed legal error when it held that Huey v. United States prevented it from ordering restitution for the defendant's entire scheme to defraud. This court has repeatedly stated that Huey v. United States was partially overruled by the 1990 amendment to the Victim Restitution Act. Indeed, as the law stands today, restitution for an entire scheme is mandatory. Under the Victim Restitution Act, as recently as October of last year, in United States v. Lowe, this court stated that when a crime of conviction is mail fraud or other crime requiring proof of a scheme, a court is authorized to order restitution on related but uncharged conduct that is part of a fraud scheme and is not limited to the harm caused by the particular counts of conviction. So, I have a question because obviously you tried to get some evidence of other conduct and the district court denied that. And so, I'm just wondering how that relates to in this case. If the district court, let's assume the district court was correct on that, does that in any way limit you in terms of presenting that same evidence for the overall scheme to defraud on the restitution? It doesn't. And the reason why is that with the amendment to the Victim Witness Protection Act in 1990, Congress established that a defendant may be required to pay restitution for an entire scheme, even for conduct that was not the subject of a conviction and indeed for conduct that was in fact acquitted. The other cases have repeatedly stated that holding. Thompson, also decided last year. Brock Davis, Bussell, Lawrence, Meredith, and Bright. Let me ask you this though. Okay, let's say we agree with you that the district court erred in not allowing you to go beyond that relied, well, misinterpreted Huey and what had happened after. But now, can the panel just direct the district court to include the non-Montana related conduct in its restitution award or must we direct the district court to first make factual findings as to whether this conduct is part of Johnson's scheme to defraud under Brock Davis? The court's primary request today is that the case be remanded for recalculation of restitution under the Mandatory Victim Restitution Act without the limitation placed on the case by Huey as it is an overruled case. Well, is it possible that some of the out-of-state conduct is not related? As to the government's point of view, it is not. However, the district court did not make a finding as to all of the defendant's conduct outside of Montana. That's a really... You're asking that the... Go ahead. I'm sorry. You're asking that the court, the district court go back and have an actual evidentiary hearing to make sure that all of the conduct that you're including in this large basket should be included for restitution or should... In other words, if I just simply take your word for it, then we would just have this massive amount. But it seems to me that there could be other uncharged conduct or other activities that have gone on that may not be subject to restitution in this particular case. That is a possibility. And at the sentencing in this matter, the government presented a fairly large amount of evidence that the defendant's scheme existed outside of Montana. And we're not asking for the court to reopen evidence in this case. We're simply asking that the court apply the law as it stands after the 1990 Amendment to the Victim Restitution Act. There is discretion the court has in finding whether that conduct is related. But as to... You're talking about the district court. Yes. As to the amount of restitution that should be included as part of the scheme, the district court itself found when it was calculating the amount of relevant conduct that, in fact, the defendant's scheme extended outside of Montana. In fact, as I wrote in my 28J letter, there was approximately $15,000 of restitution that extended outside of Montana that the court considered part of the defendant's scheme to defraud as it concerned the issue of relevant conduct. I think it seems to be that counsel for the defendant in this case seems to be arguing that because the district court excluded the evidence under, was it, 404B, I guess? Correct. That then now, that in and of itself is that sort of race judicata as to showing a scheme restitution. Yes, Your Honor. And that is his argument. As far as the doctrine of collateral estoppel, it would not apply in this case for a couple reasons. First is that the issue of restitution was not decided until the very end of the case, and the court misapplied Huey to exclude an award of restitution for the defendant's scheme to defraud as it existed outside of Montana. Therefore, the issue of restitution was not decided until the very end of this case at sentencing. The other problematic part of applying collateral estoppel doctrine in this case is that for collateral estoppel to apply, there has to be a final judgment, and the government has appealed this case. Therefore, the issue of whether restitution was properly awarded or properly denied in this case is right before this court. Therefore, there is not a final judgment to apply. Do we need to address that issue in remanding it to the district court? I don't believe the court does have to, the reason being that the issue is ripe, and it was properly preserved at sentencing and, therefore, appealed in this case. As to the defendant's argument that there was insufficient evidence of his scheme to defraud in this case, the government would simply point out that the evidence was uncontroverted, that the defendant represented that he was a Grammy-nominated artist, that he worked for Sony when he, in fact, did not, that he was collecting money for charity when he, in fact, was spending money on himself, and also that he was attempting to sell Grammy tickets that he was not authorized to sell to the public. I will save the remainder of my time for rebuttal. Thank you. That's fine. We'll hear from the defendant. Appellee. Afternoon, Your Honors. My name is Michael Donahoe. I'm from the Federal Defender's Office in Hell, and I represent Mr. Johnson. I'd like to begin by trying to answer Judge Callahan's question. The first question, the government conceded an argument during trial. They persisted in wanting to get more evidence in terms of the scheme that was alleged. And in the excerpts at Volume 2, 403, 404, the government tells the court that it's concerned that Mr. Johnson will be able to claim double jeopardy because the scheme that's being proved over and against the limitation that the court imposed is different from what was alleged. So it mystifies me that Mr. Spraker or the government would contend something different today. The basic facts here are ---- But it's a different 404B is a different standard than determining restitution and application of Huey. I mean, that's a legal issue on the restitution. The other is we review for abuse of discretion if we were reviewing it, which we're not really. Well, I understand that. But, I mean, I have a jurisdiction claim here, and I want to argue that. You know, we went through different iterations on this evidence, the government's evidence. There were three orders, and I have the record reference sites to them. The first order I'll call kind of soft in response to my pretrial motions. And the government came in, which generated the second order, asking for clarification. And that order was stronger. And then because we went through a couple of failed plea changes, we wound up with a very strong order that said, look, here's the deal. The government is not going to be able to put this evidence on. The scheme that was alleged is this scheme and outlined the contours of that scheme. And my argument here is, is that at that point, just like in Loftus, the government should have taken the appeal. They had no other alternative. They were at risk of not proving the scheme that they alleged in the indictment. And that's exactly what happened. So what was the scheme that they alleged in the indictment? Explain it to me. It's pretty simple. The scheme that was alleged in the indictment was that Mr. Johnson had contact with people from Big Brothers and Big Sisters in Gallatin County, sort of insinuated himself into a golf tournament that was upcoming, that there were certain representations made by Mr. Johnson about his coming to the golf tournament, playing music, donating some Grammy tickets, et cetera. Mr. Johnson went to the event, played as agreed, was prepared to follow through with the Grammy tickets, and Big Brothers and Big Sisters. The record doesn't tell us exactly what happened. All we know is that the deal never came to fruition. So as I understand it, the indictment is actually much broader than that, though, isn't it? It was. It talks about the means and methods and whatnot? It actually, even in a temporal sense, I think it started in 2011, went maybe to 2014, something like that. But at the trial, the evidence was narrowed to a very precise point in time that dealt with just a few weeks. That was because of Judge Christensen, right? That's correct. He made that order, correct. And that order is in ER Volume 3, 568 to 572. You're saying they should have appealed that order? They should have appealed that order. That should have been the basis for the appeal. And what the government was at risk of and what they're at risk of here today is that the claim can't be brought now. You can't take something that should have been part of the trial proper and then turn on a dime, Your Honor, and say these are sentencing factors now. Well, we're talking about restitution, which is part of sentencing, right? Well, that may complicate the analysis a little bit, but I don't think it alters the fact. Isn't restitution separate? No. So he was found guilty of wire fraud, right? Involving big brothers and big sisters. Okay. And the order made that perfectly clear that that was going to be the outcome. When it comes to restitution, well, I can't think why I don't understand. I still don't quite know. I'm not sure I'm following you completely. Okay. But I don't understand why the government can't show that the scheme to defraud involved was much broader. All right. Well, it's a separate inquiry, Judge Callahan. Let me take another run at it this way. There's one single wire alleged in the indictment that occurs on one occasion between two parties. Now, if the scheme, and that's in July of 2012, I believe. Now, if the scheme alleged in July of 2011 and coming up to 2012 and including big brothers, big sisters, and then moving on into other areas, other states, and so on, that single wire transaction under this Court's cases that are cited in the briefing can't support all of that alleged fraud. Can't do it. Each of those events are separate. What the government wanted to do was conflate things that didn't belong together and support them with a single wire transaction that had something to do with a very specific allegation of fraud. But your client would like to be prosecuted separately and face consecutive sentences? No, Your Honor. He's jeopardied out on that now. That's what was alleged. And then the proof was altered. The government went through a very substantial alteration of its allegation by document number 67 in the district court, the July 6th order of 2015. It narrowed that scheme. Well, they had to because the district court told them they had to. Right, and then through the entire trial proper, each time the government went to get into those matters, all of that effort that was shut down, foreclosed. No, none of that evidence came in. Let me still the scheme was he had this method or he had this, I don't know what you want to call it. And they're not the same. And we could argue that all day long. And I don't know that we need to do that, Your Honor. It wasn't the same when he offered. It wasn't the same one. When he offered. It wasn't the same one. And I think even the sentence. Paying tickets elsewhere. No, and the sentencing transcript alludes to that and even uses that as a marker at the sentencing and says, you know, some of these other matters didn't involve the Grammy tickets. They were different. But I don't want to. Were all these other alleged victims nonprofits? I don't know the answer to that. I don't know the answer to that. All I can tell you is. People also trying to raise money? Well, people, I guess, trying to raise money. That may be counseled. Also, this district court in this case started the sentencing hearing at 1053 in the morning and went until 610 p.m. at night. The district court heard extensive evidence and really went into great detail. And obviously all of the other factors that we're talking about, which I'm still trying to keep focused on. I'm thinking it's about restitution. Took all of that into consideration. Is that correct? That's correct. But I guess my comeback to that, Your Honor, is that that's all the evidence that should have been put on at the trial. As a result of the judge's order, all of that evidence was excluded. And in Loftus, the government had the wit to come up to this court right away. And they should have done that in this case and did not. So by failing to do that, they cannot seek restitution? That's correct. Beyond what the evidence was presented. That's correct. The scheme that they alleged they did not prove as a result of an evidentiary order. Correct. Yeah. Okay. Well, you know, there is a distinction between sentencing and the conviction. Correct? And I'm trying to take full value of that. From Jones to Booker, we've lived through various iterations of what's sentencing factors and so on. And I know the Court's familiar with that line of reasoning. The government alleged a particular scheme here, and they were confronted with a ruling that said you're not going to be able to prove that by way of evidence. And they can't jump ship on it now and make them sentencing factors. In the indictment, did they specifically say they were going to ask for restitution? No. So you don't claim that they can ask for restitution, do you? Well, they can ask for restitution. It has to be tethered to the offense of conviction. That restitution, the district court was extraordinarily patient in that sentencing hearing that day and listened to everything. I mean, my last argument would be there's not even a change that should occur there, even if everything I say doesn't prevail today. Okay. Thank you. Your Honors, I think defense counsel's last statement is probably the best illustration of why the government has appealed this case. His assertion was that the restitution has to be tethered to the offense of conviction, and that was precisely what was partially overruled by the Victim Witness Restitution Act Amendment of 1990. The district court was required to order restitution for the defendant's entire scheme to defraud in this case, and it failed to do so under a case that had been overruled. If there's nothing further, I have nothing else. Thank you. Okay. Thank you, counsel. We appreciate your arguments.
judges: Paez, Callahan, England